# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SPRINGFIELD TERMINAL RAILWAY COMPANY, | ) ) ) | |
| Petitioner, | ) ) | |
| -v.- | ) ) | CA No. 04-12705-RGS |
| UNITED STATES SURFACE TRANSPORTATION BOARD and THE UNITED STATES OF AMERICA, | ) ) ) ) | Judge Richard G. Stearns |
| Defendants. | ) ) ) | |

## BRIEF OF PETITIONER
## SPRINGFIELD TERMINAL RAILWAY COMPANY

On Petition for Review from a Decision of the
Surface Transportation Board
STB Docket No. 42075

ORAL ARGUMENT REQUESTED

<div style="margin-left:40%">

Eric L. Hirschhorn
Anne W. Stukes
Winston & Strawn LLP
1700 K Street NW
Washington DC 20006
Tel. 202-282-5706 (fax 202- 282-5100)
E-mail: ehirschhorn@winston.com

Robert B. Culliford, BBO #638468
Pan Am Systems, Inc.
Pease International Tradeport
14 Aviation Avenue
Manchester NH 03801
Tel. 603-766-2002 (fax 603-766-2094)
E-mail: rculliford@flypanam.com
*Counsel for Petitioner Springfield Terminal*
*Railway Company*

</div>

March 31, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

REQUEST FOR ORAL ARGUMENT ......................................................................... 1

ISSUE PRESENTED..................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 4

STANDARD OF REVIEW ........................................................................................... 5

ARGUMENT................................................................................................................. 6

I.    The STB improperly ignored the plain meaning of 49 U.S.C. § 11705(g)......................... 6

      A.    This Court's review should begin and end with Step One of *Chevron*. ..................6

      B.    Under 49 U.S.C. § 11705(g), claims for car mileage accrue when the
            loaded car is delivered to the consignee. ................................................................7

      C.    The STB erroneously exalted the tariff's optional procedures over the
            plain meaning of 49 U.S.C. § 11705(g). ..................................................................9

II.   If claims do not accrue upon delivery, they accrue when reporting of, and
      payment for, the use of cars are due, namely one month and ten days after the
      end of the month in which car usage occurs. ................................................................. 13

CONCLUSION............................................................................................................. 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.J. Phillips Co. v. Grand Trunk W. Ry. Co.*, 236 U.S. 662 (1915) ................................7

*Aluminum Ass'n, Inc. v. Atchison, Topeka & S.F. Ry.*, 746 F. Supp. 207
    (D.D.C. 1990) ......................................................................................7

*Arkansas Oak Flooring Co. v. Louisiana & A. Ry. Co.*, 166 F.2d 98 (5th Cir. 1948)................1, 7

*Atchison, Topeka & S. F. Ry. Co. v. Benchcraft, Inc.*, 381 F. Supp. 603 (W.D. Mo.),
    *aff'd*, 503 F.2d 560 (8th Cir. 1974) ....................................................9, 12

*Atlantic Coast Line R.R. Co. v. United States*, 213 F. Supp. 199 (M.D. Fla. 1963),
    *aff'd*, 334 F.2d 46 (5th Cir. 1964), *rev'd on other grounds*, 383 U.S. 576 (1966)................11

*Baker v. Chamberlain Mfg. Corp.*, 356 F. Supp. 1314 (N.D. Ill. 1973) ........................................11

*Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996).............................................8

*Bethlehem Steel Co. v. Consol. Rail Corp.*, 515 F. Supp. 472 (E.D. Pa. 1981)...............................7

*Brown v. Secretary of Health & Human Serv.*, 46 F.3d 102 (1st Cir. 1995) .................................13

*Cannon v. University of Chicago*, 441 U.S. 677 (1979).................................................................12

*Central Maine Power Co. v. FERC*, 252 F.3d 34 (1st Cir. 2001).....................................................5

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984).........................................................................4, 6, 8

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311 (1981)................................2

*Engelhard Corp. v. Springfield Terminal Ry. Co.*, 193 F. Supp. 2d 385
    (D. Mass. 2002)...........................................................................3, 7, 12

*General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581 (2004)...................................................6

*Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421 (1987)............................6

*Inter-Coastal Xpress, Inc. v. United States*, 49 Fed. Cl. 531 (2001),
    *aff'd*, 296 F.3d 1357 (Fed. Cir. 2002) ......................................................13

*Investigation of Tank Car Allowance System*, 3 I.C.C.2d 196,
    1986 ICC LEXIS 137, 36 (1986)...............................................................2

*J.D. Pittman Tractor Co. v. Alabama G. S. R. R. Co.*, 286 I.C.C. 575 (1952) ...............................11

*Kansas City S. Ry. Co. v. Wolf*, 261 U.S. 133 (1923) ......................................................7

*Lipp v. United States*, 157 Ct. Cl. 197 (1962) .........................................................13

*Midstate Horticultural Co. v. Pennsylvania R.R. Co.*, 320 U.S. 356 (1943) ......................7, 11, 12

*Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973 (Fed. Cir. 1994) ................................13

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)...........................................8

*N.L.R.B. v. Beverly Enterprises-Massachusetts, Inc.*, 174 F.3d 13 (1st Cir. 1999)......................6

*Pennsylvania R.R. Co. v. Carolina Portland Cement Co.*, 16 F.2d 760 (4th Cir. 1927)...............8

*Reiter v. Cooper*, 507 U.S. 258 (1993) ..............................................................5, 8

*Saljoan Coal & Coke Corp. v. Reading Co.*, 284 I.C.C. 102 (1952)...........................................11

*South Omaha Terminal Ry. Co. v. Armour & Co., Inc.*,
    373 F. Supp. 641 (D. Neb. 1974)............................................................7, 9, 10, 11

*Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005) ......................................................7

*Tractor & Equip. Co. v. Alabama G. S. R. R. Co.*, 298 I.C.C. 187 (1956) ....................................11

*Trafalgar Capital Assocs., Inc. v. Cuomo*, 159 F.3d 21 (1st Cir. 1998) ........................................13

*Union Pac. R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130
    (C.D. Calif. 2002) ..................................................................................9

*Williams v. Chrysler Corp.*, 991 F. Supp. 383 (D. Del.), *aff'd*, 163 F.3d 183
    (3d Cir. 1998)..................................................................................14

*Wisconsin Bridge & Iron Co. v. Illinois Terminal Co.*, 88 F.2d 459 (7th Cir. 1937)....................12

## STATE CASES

*Chesapeake & O. R. R. Co. v. Wiener*, 58 N.W.2d 918 (Mich. 1953)............................................11

*Chicago, R. I. & P. R. R. Co. v. Black, Sivalls & Bryson, Inc.*, 147 P.2d 455
    (Okla. 1944) .................................................................................1, 12

## FEDERAL STATUTES

5 U.S.C. § 706 (2000) ..............................................................................................................4, 5, 7

28 U.S.C. § 1336(c) (2000)...........................................................................................................3, 4

49 U.S.C. § 10705(g) ................................................................................................... *passim*

49 U.S.C. § 10101-11908 ...............................................................................................................2

ICC Termination Act of 1995, Pub. L. No. 104-88, § 102, 109 Stat. 803, 847.........................8, 12

## REQUEST FOR ORAL ARGUMENT

Petitioner Springfield Terminal Railway Company ("Springfield") respectfully requests that the Court hear oral argument on this Petition for Review. Although the relevant facts are undisputed, the legal issues presented involve specialized areas of railroad law, and require this Court's review in an appellate capacity under the Administrative Procedure Act ("APA"). Thus, oral argument would materially enhance this Court's decisional process.

## ISSUE PRESENTED

Is the Surface Transportation Board's September 27, 2004 decision arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law because it failed to determine that a cause of action for failure to pay railroad car mileage allowances accrues, within the meaning of 49 U.S.C. § 10705(g), at the time each shipment is delivered to the consignee?

## BACKGROUND AND PROCEDURAL HISTORY

This case is before the Court on Springfield's Petition for Review of a September 27, 2004 decision of the Surface Transportation Board ("STB"). *See* Petition for Review, Exhibit B (hereafter, "STB Decision") [Docket No. 1]; JA000533.[1]  For purposes of this petition for review, Springfield concedes, *arguendo*, that the facts recited in the "Background" section of the STB Decision are not in dispute. *See* STB Decision at 2-3 (JA000534-535).

For context, however, a brief recitation of the facts is appropriate. The question presented in this matter arises from an underlying action in this Court. In 2001, Engelhard Corporation ("Engelhard") filed Civil Action No. 01-10829-RGS against Springfield and Consolidated Rail Corporation ("Conrail"). Engelhard claims to be owed $568,155.13 as car

---

[1] A Joint Appendix, filed separately with the Court on March 31, 2006, contains pertinent material from the record before the Surface Transportation Board. Citations in this brief to page numbers "JA000*nnn*" refer to the Joint Appendix.

mileage ("mileage allowances" or "mileage") allegedly earned in connection with rail shipments in privately-owned tank cars dating back to 1991.

Springfield and Conrail are rail carriers regulated under the Interstate Commerce Act ("ICA").[2] Engelhard is a shipper. Engelhard supplies kaolin clay mined in Georgia to paper manufacturers in the northeastern United States. Engelhard ships the clay in, *inter alia*, tank railroad cars that it owns or leases. Railroads pay for the use of Engelhard's loaded cars based on private car mileage allowances published in Tariff 6007 (filed with the STB), which sets the national mileage-allowance system for privately owned tank cars. *See* Tariff 6007 (JA000282); *Investigation of Tank Car Allowance System*, 3 I.C.C.2d 196, 1986 ICC LEXIS 137, *36 (1986) (allowances to be paid on actual loaded car miles). Both Springfield and Conrail are signatories to Tariff 6007.

Engelhard seeks mileage allowances from Springfield, Conrail, or both, for the carriers' use of cars owned by or leased to Engelhard on a particular stretch of railroad. The rail line at issue is a 155-mile segment between Selkirk, New York, and Barber Station, Massachusetts (the "Rail Line"). *See* STB Decision at 2 (JA000534). Engelhard alleges that Springfield and Conrail moved freight in rail cars owned by or leased to Engelhard over the Rail Line, but failed to pay the car mileage set by Tariff 6007. *Id.*

Conrail owns the Rail Line, but operations over the Rail Line are governed by a haulage agreement between Springfield and Conrail. *See* JA000262 (hereafter, "Haulage Agreement"). There has been some confusion over which of the two railroads is responsible for paying mileage allowances for movements of Engelhard's cars over the Rail Line. Conrail has never paid

---

[2] The rail provisions of the ICA have been codified at 49 U.S.C. § 10101-11908. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 319 & n. 7 (1981).

Engelhard any mileage.    Springfield has paid Engelhard mileage for some, but not all,

movements over the Rail Line. *See generally* STB Decision at 2 (JA000534).

Engelhard's amended complaint alleged one federal cause of action under the ICA and

four state law causes of action.  Springfield and Conrail filed motions to dismiss.  On April 2,

2002, this Court issued a Memorandum and Order that found:  (1) Engelhard's state law claims

are preempted by the ICA, 49 U.S.C. §10501(b) (2000); and (2) Englehard's federal claim for

mileage allowances is subject to a two-year statute of limitations pursuant to the ICA, 49 U.S.C.

§ 11705(c) (2000).  *See Engelhard Corp. v. Springfield Terminal Ry. Co.,* 193 F.Supp.2d 385,

392 (D. Mass. 2002) (JA000070).  Because Engelhard did not file its Complaint until May 15,

2001, Engelhard's federal claim was untimely to the extent Engelhard sought to recover on any

mileage-allowance claims that accrued prior to May 15, 1999.

Although this Court determined that the statute of limitations in 49 U.S.C. § 11705(c)

applies to Engelhard's federal mileage-allowance claim, the Court did not determine when

Engelhard's ICA claims for mileage allowances *accrued* for statute of limitations purposes.

Instead, pursuant to the doctrine of primary jurisdiction, this Court referred the issue[3] to the STB

on May 22, 2002:

---

[3]  This Court also referred a second issue to the STB:  "Is a railroad obligated to pay compensation under Tariff 6007 only to the owner of a car's reporting mark, or does Item 180 of such tariff permit the owner of the mark to assign the right to payment to a lessee of a car?"  *See* JA000075.  In discussing this question, the STB observed that Engelhard "did not always follow all of the instructions" of Tariff 6007, Item 180(3)(A) with regard to notification of its reporting marks.  STB Decision at 6 (JA000538).  The STB observed that Engelhard might be able to pursue its claims if Engelhard could demonstrate that "the course of dealing between Engelhard and the Defendants was such that Engelhard should be allowed to pursue mileage allowance claims despite [Engelhard's] lack of literal adherence to the requirements of Tariff 6007 Item 180 in some instances."  STB Decision at 7 (JA000539).  Although Springfield timely sought review of the entire STB decision, Springfield does not now seek review of this aspect.  Engelhard did not seek review of the STB determination, *see* 28 U.S.C. § 1336(c) (2000) (90-day limit), and accordingly can prevail on this issue only by demonstrating at trial, pursuant to the STB's order, that "the course of dealing between Engelhard and the [rail carriers] was such that Engelhard should be allowed to pursue mileage allowance claims despite [Engelhard's] lack of literal adherence to the requirements of Tariff 6007 Item 180 in some instances."  *See* STB Decision at 7 (JA000539).

> Does a cause of action involving a disputed failure to pay car mileage allowances under Tariff 6007 arise one month and ten days after the end of the month in which the obligation is incurred, or four months after the date on which a railroad refuses to pay or act on a claim, or on the occurrence of some other date or event?

*See* Petition for Review, Exhibit A [Docket No. 1]; JA000074-076. Before the STB, Springfield argued that 49 U.S.C. § 11705(g) determines the accrual of mileage claims. *See* JA000500-515.

On September 27, 2004, the STB served its declaratory order ("STB Decision") in response to this Court's referral. In pertinent part, the STB Decision found that pursuant to Tariff 6007—

> a cause of action involving a disputed failure to pay car mileage allowances arises when the private car owner is informed that it will not receive compensation for its car movement or 4 months from the date the claim was submitted, whichever occurs first, if the private car owner takes no additional action. If the private car owner timely resubmits its claim to the railroad, the cause of action arises when the private car owner is notified of the railroad's action on the resubmitted claim or the period for the railroad to reply has expired, whichever occurs first.

STB Decision at 7 (JA000539).

Springfield filed a timely petition for review. *See* 5 U.S.C. § 706 (2000); 28 U.S.C. § 1336(c) (2000).

## SUMMARY OF ARGUMENT

This Court's review should begin and end with "step one" of the familiar analysis of agency actions in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron* step one, if the statute in question is clear, the Court must give effect to the language as written by Congress, regardless of the STB's interpretation. Here, Congress unambiguously has provided that "[a] claim related to a shipment of property accrues . . . on delivery or tender of delivery by the rail carrier." 49 U.S.C. § 11705(g) (2000). The text of

4

§ 11705(g) is "simple and obvious." *Reiter v. Cooper*, 507 U.S. 258, 267 (1993). Claims for car mileage accrue when the loaded car is delivered to the consignee, at which time the claim is fixed and determinable. Indeed, the courts have gone so far as to hold that demurrage claims, which do not arise until *after* delivery, are subject to subsection (g).

The STB, concerned that adherence to the statute would undermine Tariff 6007's informal dispute resolution procedures, improperly exalted Tariff 6007 over the plain meaning of 49 U.S.C. § 11705(g). As a matter of law, of course, a tariff cannot trump a statute.

Finally, even if Engelhard's claims did not accrue under § 11705(g) upon delivery, they accrued when reporting of, and payment for, the use of cars was due, namely one month and ten days after the end of each month in which car usage occurred.

## STANDARD OF REVIEW

The standard of review of agency action is well-established. The APA provides that a reviewing court shall find unlawful any agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). The degree of deference to an agency decision depends on whether the agency's conclusion is based on factual interpretation or is purely a question of law. If, as is the case here, the agency's finding concerns a purely legal question, the court reviews the agency decision *de novo* under the APA. *Central Maine Power Co. v. FERC*, 252 F.3d 34, 40 n. 3 (1st Cir. 2001) ("The conventional rule is that general issues of law are considered *de novo*.") (citing *Boston Edison Co. v. FERC*, 856 F.2d 361, 363 (1st Cir. 1988)).

## ARGUMENT

**I.     The STB improperly ignored the plain meaning of 49 U.S.C. § 11705(g).**

    **A.     This Court's review should begin and end with Step One of *Chevron*.**

      *Chevron* guides this Court's review.  There, the Supreme Court adopted a "two-step" analysis for the review of agency actions:  The court first must ask whether Congress has spoken clearly on the issue.  If—and *only* if—Congress has been unclear, the court must determine whether the agency's interpretation is a permissible construction of the statute.

      Thus, if the statute is clear on its face, the Court need never reach step two of the *Chevron* analysis—and consequently, will owe no deference to the agency's interpretation.  *See N.L.R.B. v. Beverly Enterprises-Massachusetts, Inc.*, 174 F.3d 13, 22 (1st Cir. 1999).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43.

> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

*Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987) (quoting *Chevron,* 467 U.S. at 843 n. 9) (internal quotation marks omitted).  Step two of the *Chevron* analysis is to be reached only if the statute is "silent or ambiguous with respect to the specific issue."  *Id.* at 445; *see General Dynamics Land Sys., Inc. v. Cline,* 540 U.S. 581, 600 (2004) ("deference to [the agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent").

      Thus, in conducting the *Chevron* analysis, the Court first assesses whether "Congress has directly spoken to the precise question at issue."  *Chevron,* 467 U.S. at 842.  "In determining the

meaning of a statute, [the court's] analysis begins with the language of the statute." *Succar v. Ashcroft*, 394 F.3d 8, 22 (1st Cir. 2005). Courts look at "the most natural reading of the language" that Congress provided. *Id.*

Here, Congress has explicitly addressed the question that this Court referred to the STB. The ICA provides that "[a] claim related to a shipment of property accrues . . . on delivery or tender of delivery by the rail carrier." 49 U.S.C. § 11705(g) (2000). In holding the contrary, the STB's decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A) (2000).

**B.     Under 49 U.S.C. § 11705(g), claims for car mileage accrue when the loaded car is delivered to the consignee.**

As noted above, Engelhard seeks payment of car mileage under the ICA. The limitations periods for most actions under the rail provisions of the ICA are set out in 49 U.S.C. § 11705. Indeed, this Court has already held correctly that the statute of limitation applicable to this action is that of 49 U.S.C. § 11705(c), namely "2 years after the claim accrues." *Engelhard Corp. v. Springfield Terminal Ry. Co.*, 193 F. Supp. 2d 385, 390 (D. Mass. 2002); *accord Kansas City S. Ry. Co. v. Wolf*, 261 U.S. 133, 138-39 (1923); *A.J. Phillips Co. v. Grand Trunk W. Ry. Co.*, 236 U.S. 662, 667 (1915); *Aluminum Ass'n, Inc. v. Atchison, Topeka & S.F. Ry.*, 746 F. Supp. 207, 213 n. 8 (D.D.C. 1990). The relatively short limitations periods set by the ICA reflect a policy favoring "promptness in collection," *Midstate Horticultural Co. v. Pennsylvania R.R. Co.* 320 U.S. 356, 367 (1943), and a claim accrues under the ICA as soon as "the right to sue has fully matured," *Arkansas Oak Flooring Co. v. Louisiana & A. Ry. Co.*, 166 F.2d 98, 101 (5th Cir. 1948); *accord Bethlehem Steel Co. v. Consol. Rail Corp.*, 515 F. Supp. 472, 473 (E.D. Pa. 1981); *South Omaha Terminal Ry. Co. v. Armour & Co., Inc.*, 373 F. Supp. 641 (D. Neb. 1974).

Subsection (g) of § 11705 provides that "[a] claim *related to* a shipment of property accrues under this section on delivery or tender of delivery by the rail carrier." 49 U.S.C. § 11705(g) (2000) (emphasis added). From a purely textual standpoint, then, subsection (g) applies to claims for car mileage allowances related to shipments of property, as are in question here. As the Supreme Court has repeatedly held, the word relate/related/relating in a statute is broad and expansive. A statute that employs the term "related to" applies "'if it has a *connection with, or reference to*'" the object stated in the statute. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992) (emphasis added; citations omitted). "The word 'relates' is highly general, and th[e] [Supreme] Court has interpreted it broadly." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 38 (1996).

The Supreme Court has characterized § 11705(g) as "simple and obvious." *Reiter*, 507 U.S. at 267 (commenting on previous codification at 49 U.S.C. § 11706(g)).[4] Under step one of *Chevron*, therefore, the most natural reading of § 11705(g) is that the statute applies broadly to mileage charges that relate to, have a connection with, or reference to the shipments at issue here.

The STB improperly ignored *Chevron* step one when—without citation of a single case—it rejected a plain reading of § 11705(g) in favor of supposed "[h]istorical industry practice … to treat mileage allowance payments as a discrete commercial transaction (provision of rail equipment) separate from the shipment of property." STB Decision at 5 (JA000537). The courts repeatedly have held, however, that for purposes of subsection (g), a "shipment of property" refers not only to the contents of the cars but to the cars themselves. *Pennsylvania R.R. Co. v.*

---

[4] Although § 11705(g) was most recently enacted in 1995, ICC Termination Act of 1995, Pub. L. No. 104-88, § 102, 109 Stat. 803, 847, it is substantively identical to § 424 of the Transportation Act of 1920 and the successor provisions, *see Reiter*, 507 U.S. at 267. For this reason, pre-1995 case law is apposite here.

*Carolina Portland Cement Co.*, 16 F.2d 760, 761 (4th Cir. 1927) ("'Shipment' is a broader, not a narrower, word than 'transportation,' and can be used to include the property which is the subject of transportation as well as the transportation itself."); *Atchison, Topeka & S. F. Ry. Co. v. Benchcraft, Inc.*, 381 F. Supp. 603, 604 (W.D. Mo.) ("The phrase 'in respect of a shipment of property' [in the predecessor to § 11705(g)] does not limit [the statute] to actions which arise out of the actual moving of the property as distinguished from charges for storage and demurrage" of rail cars), *aff'd*, 503 F.2d 560 (8th Cir. 1974). Thus, for example, demurrage charges—which by definition aren't incurred until *after* delivery—are subject to § 11705(g). *Union Pac. R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1133 (C.D. Calif. 2002); *South Omaha Terminal Ry.*, 373 F. Supp. 641 (applying statute to demurrage accrual on empty cars); *Benchcraft*, 381 F. Supp. at 604. Here, by contrast, the charges are incurred, fixed, and determinable *at* the time of delivery. Most assuredly, then, the claims at issue here "relate[] to a shipment of property" and accrue upon delivery of each loaded car to the consignee.

### C.     The STB erroneously exalted the tariff's optional procedures over the plain meaning of 49 U.S.C. § 11705(g).

The STB compounded its error by concluding that a cause of action for mileage cannot accrue until the shipper has exhausted the *optional* dispute resolution procedures under Tariff 6007. The tariff provides that: (1) car mileage is to be reported and paid within one month and ten days after the close of the month in which the car usage occurs, *see* Tariff 6007, Item 180, ¶ 2, (2) a car owner's claim for nonpayment is to be presented to the carrier within twenty-four months after the end of the month the report was made, *id.* Item 182, ¶ 2.A., and (3) the carrier is to determine such a claim within four months after presentation, *id. See* JA000289.

Based upon this language, the STB concluded:

> [U]nder the procedures of Tariff 6007, a cause of action would arise when the private car owner is informed that it will not receive compensation for its car movements or 4 months from the date the claim was submitted, whichever occurs first, if the private car owner takes no additional action. If the private car owner timely resubmits its claim to the railroad, the cause of action arises when the private car owner is notified of the railroad's action on the resubmitted claim or when the period for the railroad to reply has expired, whichever occurs first.

STB Decision at 4 (JA000536). The STB expressed concern that Springfield's "interpretation [of § 11705(g)] would force car owners immediately to file court actions to recover car allowances before the tariff's mechanism for informal dispute resolution began, thereby making the provisions of the tariff meaningless." STB Decision at 5 (JA000537).

Neither the optional, informal procedures in the tariff nor the STB's concern for protecting those procedures, however, can trump the plain force and effect of § 11705(g). The *South Omaha* decision is instructive. There, demurrage charges were recorded daily but, by agreement between carrier and shipper, were not tallied until the end of each month. *South Omaha,* 373 F. Supp. at 643. The carrier contended that "since no final accounting of the demurrage was made until July 31, no cause of action for demurrage for any of the July days accrued until the end of that month." *Id.* The court rejected this argument:

> The indeterminateness prior to the last day of the month . . . was not a factual or substantive one but rather a computational one. The amount owed in our situation accrued and was perfectly determinable on a factual level at any given point in the month in question and indefiniteness resulted only from the agreement . . . to defer computation for any given day until the last day of the month.
>
> \*    \*    \*
>
> [T]here is a crucial difference between an "indeterminable amount" and an "amount not determined," the former being intrinsically factual while the latter is extrinsic to the facts and "not determined by agreement of the parties."
>
> \*    \*    \*

Plaintiffs' major error lies in its misconstruing of the terms "accrue" and "come due" at least for the purposes of [§ 11705(g)]. The statute is explicit that accrual under [§ 11705(g)] is not synonymous or mutually interchangeable with collectability or dueness of the debt and that *the point of delivery overrides any conventional notion of when an action judicially matures*. Indeed if the statute had meant to adhere to the general standards of allowing the statute of limitations to run from the point when the action could have been brought then [§ 11705(g)] would have been totally superfluous. It is therefore clear that *Congress anticipated the multitude of variations in periods of limitations that would result if conventional standards of triggering the period were used and promulgated [§ 11705(a) and (g)] in order to avoid such variation by creating a uniform time of accrual irrespective of when the action could have generally been brought.*

*Id.* at 643-44 (emphasis added); *accord Baker v. Chamberlain Mfg. Corp.*, 356 F. Supp. 1314 (N.D. Ill. 1973).

The instant case is remarkably similar to *South Omaha*. Although Tariff 6007 provides that computation and payment are not due until one month and ten days following the end of each month, the amount owed can be calculated at any given point. Hence there is no warrant for ignoring the clear congressional command of § 11705(g) that each claim for car mileage accrues on the day the car is delivered to the consignee.

The limitations established by § 11705 are jurisdictional, barring not only the remedy but the right itself. *Midstate Horticultural*, 320 U.S. at 363-64; *Atlantic Coast Line R.R. Co. v. United States*, 213 F. Supp. 199, 204-05 (M.D. Fla. 1963), *aff'd*, 334 F.2d 46 (5th Cir. 1964), *rev'd on other grounds*, 383 U.S. 576 (1966); *Tractor & Equip. Co. v. Alabama G. S. R.R. Co.*, 298 I.C.C. 187, 188 (1956); *J.D. Pittman Tractor Co. v. Alabama G. S. R.R. Co.*, 286 I.C.C. 575, 576 (1952); *Saljoan Coal & Coke Corp. v. Reading Co.*, 284 I.C.C. 102, 104 (1952). Accordingly, they cannot be waived by such devices as a regulation or tariff, *see Chesapeake & O. R.R. Co. v. Wiener*, 58 N.W.2d 918 (Mich. 1953) (ICC regulation), an agreement (express or

implied) among private parties,[5] *Midstate Horticultural*, 320 U.S. at 357-58; *Chicago, R. I. & P. R.R. Co. v. Black, Sivalls & Bryson, Inc.*, 147 P.2d 455 (Okla. 1944), or estoppel, *Wisconsin Bridge & Iron Co. v. Illinois Terminal Co.*, 88 F.2d 459 (7th Cir. 1937). Further, Congress, which is presumed to act with awareness of judicial interpretations of § 11705(g)'s predecessors, *see Cannon v. University of Chicago*, 441 U.S. 677, 696-99 (1979), enacted subsection (g) in 1995 without substantive change from its predecessors. *See* ICC Termination Act of 1995, Pub. L. No. 104-88, § 102, 109 Stat. 803, 847.

The STB rejected the plain language of § 11705(g) because conceivably—if the tank car owner procrastinated until the last possible moment to file an optional claim under Tariff 6007— the tariff's informal dispute procedures might be beginning as the statutory limitations period expires. This is because Tariff 6007 provides an optional procedure under which audit claims can be lodged with carriers up to twenty-four months after the end of the month in which usage occurs. *See* STB Decision at 5 (JA000537); Tariff 6007, Item 182 (JA000289). In a closely related context, however, the court in *Benchcraft* observed that the predecessor of § 11705(g)—

> is contrary to all judicial concepts of when a cause of action accrues. It is indeed strange to think that the statute of limitations for this action began to run before any demurrage charges were incurred. Strange as it may be, that is the law. It is based on sound congressional policy: "uniformity and equality of treatment, as between carrier and shipper." Congress simply has discarded traditional judicial concepts "in favor of the § [11705(g)] uniform statutory period of delivery as the start of the limitation period."

*Benchcraft*, 381 F. Supp. at 604-05 (citations omitted). That is the case here as well.

---

[5] The Conrail-Springfield Haulage Agreement does not purport to vary the limitation period. Further, nothing in the conduct of Springfield or Conrail, each of which believes that if any carrier is liable to Engelhard, it's the other one, prevented Engelhard from suing them within the period established by § 11705(c) and (g). In any event, this Court expressly has ruled that Engelhard had no rights under the Haulage Agreement. *Engelhard*, 193 F. Supp. 2d at 390 n. 9.

Thus Engelhard's claims accrued on the date of delivery of each individual car, and the STB's determination on this point must be set aside.[6]

## II. If claims do not accrue upon delivery, they accrue when reporting of, and payment for, the use of cars are due, namely one month and ten days after the end of the month in which car usage occurs.

Even if § 11705(g) does not establish when Engelhard's mileage claims accrued, application of common law—and common sense—leads inexorably to a conclusion that each claim accrues when reporting and payment of the claim is due. That occurs one month and ten days following the month in which the car travels over the Rail Line (e.g., on July 10 for shipments traveling in May). *See* Tariff 6007, Item 180, ¶ 2 (JA000289). Although the tariff provides an optional, informal mechanism for making claims to carriers, nothing in the tariff suggests that the filing of such a claim is a prerequisite to bringing suit.

When a statute does not explicitly require that administrative remedies or procedures be pursued before seeking judicial relief, the cause of action accrues at the time of the injury, which in this case was, at the latest, when Springfield and Conrail failed to pay within one month and ten days from the time of the movement. *See Trafalgar Capital Assocs., Inc. v. Cuomo*, 159 F.3d 21, 36-37 (1st Cir. 1998); *Inter-Coastal Xpress, Inc. v. United States*, 49 Fed. Cl. 531, 542 (2001), *aff'd*, 296 F.3d 1357 (Fed. Cir. 2002). Neither accrual of the cause of action nor the running of the statute of limitations is delayed because a litigant chooses to pursue optional, non-judicial administrative proceedings or remedies. *See Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977-78 (Fed. Cir. 1994); *Lipp v. United States*, 157 Ct. Cl. 197, 200 (1962). Only

---

[6] Should this Court set aside the STB determination, no remand is necessary because the claim before the agency was solely an issue of law that the court is equipped to settle, and will settle, in the course of this review. *Brown v. Secretary of Health & Human Serv.*, 46 F.3d 102, 114 (1st Cir. 1995).

where the exhaustion of administrative remedies is explicitly required as a prerequisite to suit does pursuit of an administrative remedy delay the accrual of the cause of action.

The STB's stated concern not to "mak[e] the provisions of the tariff meaningless," STB Decision at 5 (JA000537), has no force against the plain meaning and effect of § 11705(g).[7] The tariff does not require that the dispute resolution procedure be exhausted, or even employed, as a prerequisite to suit, and the STB may not create such a requirement. *See Williams v. Chrysler Corp.*, 991 F. Supp. 383, 387-88 (D. Del.) (where collective bargaining agreement required employee to exhaust certain intra-union appeals before bringing civil action, court will not read into agreement a requirement that employee pursue additional administrative proceedings; accordingly, pursuit of such additional proceedings did not toll running of statute of limitations), *aff'd,* 163 F.3d 183 (3d Cir. 1998). Indeed, the possibility of filing a claim with the carrier does not, and need not, stand in the way of the injured party's right to go directly to court.

Thus even should Engelhard's claims not accrue upon delivery of each car to the consignee, they accrue on the date that reporting and payment are due, namely one month and ten days following the end of the month in which the car usage occurs. The decision of the STB on this point should be vacated.

## CONCLUSION

For the reasons set out above, a cause of action involving a disputed failure to pay Tariff 6007 car mileage allowances accrues when each car is delivered to the consignee. 49 U.S.C.

---

[7] Moreover, the situation the STB fears can only arise if the tank car owner procrastinates until the very last minute before filing its claims. Thus, in addition to impermissibly ignoring the plain text of § 11705(g), the STB—employing the proverbial "slippery slope to the horrible hypothetical"—has vastly overstated the danger of adherence to the statute.

§ 10705(g) (2000).   If delivery is not effected, the cause of action accrues when delivery is

tendered.  *Id.*  Accordingly, the STB's contrary decision should be vacated.[8]

<div style="text-align:right">

Respectfully submitted,

/s/ **Eric L. Hirschhorn**
Anne W. Stukes
Winston & Strawn LLP
1700 K Street NW
Washington DC 20006
Tel. 202-282-5706 (fax 202- 282-5100)
E-mail: ehirschhorn@winston.com

Robert B. Culliford
BBO #638468
Springfield Terminal Railway Company
Iron Horse Park
North Billerica, MA  01862
Tel. 603-766-2002 (fax 603-766-2094)
E-mail: rculliford@flypanam.com

*Counsel for Petitioner Springfield Terminal
Railway Company*

</div>

March 31, 2006

---

[8] As noted above, *supra* note 6, no remand to the STB is required.

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2006, I served the foregoing Brief on the party listed

below by using the Court's electronic filing system:

Jeffrey Mark Cohen
Assistant U.S. Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA  02210
Tel. 617-748-3626 (fax 617-748-3969)
E-mail: jeffrey.cohen@usdoj.gov

*Counsel for the United States of America*

I hereby certify that on March 31, 2006, I served the foregoing Brief on the party listed

below by hand delivery:

Scott M. Zimmerman
Trial Attorney
Surface Transportation Board
Office of General Counsel
1925 K Street, N.W.
Washington, DC  20423

*Of Counsel for the Surface Transportation Board*

/s/ Gale M. Stieler

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Springfield Terminal Railway Company,

Petitioner,

v.

United States Surface Transportation
Board and The United States of America,

Defendants.

CASE NO. 04-12705-RGS
Judge Richard G. Stearns

NOTICE OF FILING WITH CLERK'S OFFICE

Notice is hereby given that the documents, exhibits or attachments listed below

have been manually filed with the Court and are available in paper form only:

Joint Appendix

The original documents are maintained in the case file in the Clerk's Office.

March 31, 2006

Eric L. Hirschhorn
Anne W. Stukes
Attorneys for Springfield Terminal
  Railway Company
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
202-282-5000

(Notice of Filing.wpd – 7/03)